DAVIS, Appellant, v. PARK SECURITIES CORPORATION, Respondent.

No. 8575

Submitted April 5, 1945. Decided May 23, 1945.

159 Pac. (2d) 323

394

Mr. Leo J. Kottas, of Helena, for appellant.

Mr. Fred L. Gibson and Mr. David B. Fitzgerald, both of Livingston, for respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

Appeal from a judgment of dismissal in an action for an accounting and to recover judgment for a percentage of

royalty payments received by defendant from certain dredging operations.

The complaint alleges that the defendant Park Securities Corporation is a closed corporation; that except for only one share, all of the issued stock of the defendant corporation is owned by C. H. Hefferlin and his wife, Mildred C. Hefferlin; that C. H. Hefferlin is the president, treasurer and general manager of the corporation which is the owner of seven patented placer mining claims located in the Emigrant Placer Mining District in Park county, Montana; that on June 27, 1936, and for a long time prior thereto, C. H. Hefferlin held himself out as the owner of said mining claims and entered into contracts and agreements of lease therefor without disclosing the name of the defendant corporation, the true owner thereof and the undisclosed principal of the agreements so entered into by its said president, treasurer and general manager, all of which the defendant corporation knew and authorized; that among the contracts so entered into was one for and on behalf of said defendant corporation made on or about the 27th day of June, 1936, with the plaintiff by which plaintiff was employed to contact and interest persons who would lease or buy said mining claims upon the terms and conditions said C. H. Hefferlin would agree upon; that the latter agreed to pay to plaintiff in consideration of said services five per cent of the royalties received or sale price of said mining claims; that acting for and on behalf of the defendant corporation the said C. H. Hefferlin signed a written memorandum setting forth the terms of the foregoing agreement, a copy of which memorandum is attached as an exhibit to the complaint; that plaintiff accepted said employment so offered him upon the conditions specified; that he contacted numerous persons and corporations endeavoring to lease or sell the property and expended time and incurred expense in that behalf; that plaintiff brought the property to the attention of G. A. Norris and Earl M. Sexton who contacted C. H. Hefferlin resulting in the making of an option to lease and purchase the same; that plain-

tiff contacted and interested one W. F. Crown, to whom he exhibited the property, and introduced Crown to C. H. Hefferlin, resulting in a lease agreement with the defendant corporation, by and through said C. H. Hefferlin, whereby Crown agreed to install a floating dredge upon the property and to pay to the defendant corporation ten per cent royalty of the gross recovery of gold and other precious metals from the property; that thereafter W. F. Crown purchased the lease and option of Norris and Sexton and proceeded to carry on placer mining operations thereon; that thereafter through divers and sundry conveyances said lease to W. F. Crown and certain interests therein were sold and assigned to the Emigrant Dredging Company, a corporation, which corporation installed a floating gold dredge and successfully operated the property, recovering a large amount of gold and other valuable metals for which it paid to defendant large sums of money in an amount of over $22,000, the exact amount of which is to plaintiff unknown; that it will require about ten years of continuous dredging operations to dredge out and mine the property for which additional large sums of money will be paid to the defendant corporation as royalties; that plaintiff demanded payment of five per cent of the sums recovered and received by the defendant corporation as plaintiff's commission but that the defendant and C. H. Hefferlin refused to pay same or any part thereof; that plaintiff does not know the exact amount of the moneys received or to be received in the future by defendant; that defendant refused and refuses to account to plaintiff for any royalties or money received by defendant from the lease to W. F. Crown now owned by the Emigrant Dredging Company and that defendant refused and refuses to exhibit to plaintiff any books of account to show the amounts so received by defendant and the exact amount due plaintiff. The prayer is for an accounting, for judgment in a sum equal to five per cent of the moneys so received by defendant and for costs of suit.

To the foregoing complaint the defendant interposed a de-

murrer which was sustained and plaintiff then elected to stand upon his complaint, whereupon his default was entered for failure to plead further and judgment of dismissal entered from which judgment the plaintiff has appealed, assigning as error the sustaining of the demurrer and the dismissal of the action.

The demurrer is both special and general. The special demurrer urges that the complaint is ambiguous, uncertain and unintelligible for the reasons that it cannot be determined therefrom: (a) whether the option to lease and purchase entered into with G. A. Norris and Earl M. Sexton "ever ripened into a contract to lease and purchase, or in a contract to lease, or in a contract to purchase, or into any contract at all," nor the terms of such option to lease and purchase; (b) what lease, if any, was sold to the Emigrant Dredging Company; (c) whether the Emigrant Dredging Company acquired the "option to lease and purchase" of W. F. Crown or the "lease and option" of G. A. Norris and Earl M. Sexton and whether it operates its dredge under the former or the latter agreement; (d) whether the Emigrant Dredging Company "paid to defendant large sums of money in an amount of over $22,000.00" pursuant to the Norris and Sexton agreement or pursuant to the Crown agreement and whether such moneys were paid "on the sale price" under a contract to purchase the mining claims; and (e) whether recovery is sought for money paid defendant on a sale of the property, or for money paid defendant pursuant to a lease thereof. In the view we take of plaintiff's pleading, we find no merit in the special demurrer and it should have been overruled.

The real question presented is whether the complaint is sufficient as against a general demurrer.

The entire contract on which plaintiff grounds his suit is attached to and made a part of the complaint. Such contract reads:

"In reply to your inquiry regarding the placer mining claims I own known as the Emigrant Placer mining Claims will give you the following information;

"These are located in what is known as the Emigrant placer Mining District, Park County Montana; There are seven patented claims dating from early dates. The abstract of title are approved by abstract attorneys. These claims have a total acreage of nearly seven hundred acres and has the first water rights to Emigrant Creek a large creek, that runs thru the center of all of the land.

"On the upper portion of these claims we have had men working by shovel and sluce boxes for the past four years. They work on their own hook and pay fifteen percent of the gross as royalty. A Mr. Anderson, the store keeper, at Emigrant, handles the gold for myself and the men and deducts the royalty. He sends it to the Denver Mint and then gets returns. During the Year of 1935 we figured that there was between Fifteen and Twenty Thousand Dollars taken from the property in Gold Dust.

"The character of this gold is rather coarse and is gotten out in the rudest methods of shovel and boxes by the miners themselves. It is estimated that the bed rock is between sixty and eighty feet from the surface. There are good pay from grass roots down. The upper end of the property averages from fifty cents per square yard up.

"All of my leases are just verbal as I do not care to tie the property up unless I can get a good responsible outfit there.

"I will consider having it operated on a fifteen percent overriding royalty or else would sell it outright at the going rates of placer mining property.

"If you are interested I would be glad to give you a reasonable time and permission of doing all the testing you care to.

"Yours truly,

"P. S. In case you contact and interest a party for successful operation I am willing to give you 5 per cent on the sale price as the money is paid.

"C. H. Hefferlin."

The defendant singles out from the above writing the words "sale price" and contends that without alleging a sale of the

property was made there is no "sale price" and the complaint fails to state a cause of action upon the contract pleaded. The writing however sets forth two separate propositions which the writer agrees will be considered, namely: (1) Having the property "operated on a fifteen percent overriding royalty or else", (2) the writer "would sell it outright." The writing makes the plaintiff an offer "to give" him "5 percent on the sale price as the money is paid" in case plaintiff should "contact and interest a party for successful operation." Now what interpretation is to be given "successful operation" and "sale price" as used by defendant in its written offer?

The legislature, by statute, has prescribed the rules by which all contracts are to be interpreted. Section 7526, Revised Codes. Such rules are obligatory on the courts. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable." Section 7527, Revised Codes. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Section 7532, Revised Codes. "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done, without violating the intention of the parties." Section 7534, Revised Codes. "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Section 7540, Revised Codes. "Particular clauses of a contract are subordinate to its general intent." Section 7541, Revised Codes. "Repugnancies in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." Section 7543, Revised Codes. "Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected." Section 7544, Revised Codes. "In cases of uncer-

tainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; * * *.'' Section 7545, Revised Codes.

''Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. The interpretation of any instrument ought to be broad enough to allow it to operate fairly and justly under all the condition to which it may apply.'' 12 Am. Jur., title ''Contracts,'' sec. 250, p. 792.

The contract in suit set forth in haec verba clearly shows that the parties were negotiating with respect to certain patented placer mining claims which were to be either, (a) operated and mined, or (b) sold outright. The words of the contract are to be interpreted as usually understood by persons in the business to which they relate, i.e. the placer mining business. Section 7536, Revised Codes. By the term ''successful operation'' is meant a successful working of the placer claims resulting in the mining and extraction of minerals therefrom at a profit, for, unless the mining operation results in the recovery of minerals at a reasonable cost and in paying quantities, it cannot well be said to be a successful venture.

In an outright sale of the patented claims the property would be conveyed to the grantee upon the payment in full of the purchase price and, ordinarily, thereafter the grantor would be done with the property and no longer concerned as to whether the subsequent mining operation conducted thereon results in success or failure. On the other hand, when the owner of patented mining claims enters into a contract for the operation or mining of his property on a royalty basis, he usually desires a ''successful operation,'' for the greater the success in

recovering the minerals, the greater will be his returns. The very fact that the owner contemplated a deal which would result in the "successful operation" of the placer claims is shown by the offer to give plaintiff a stipulated percentage "as the money is paid" which simply means that when and as the money is paid to defendant on a "successful operation" of the property, then will defendant give to plaintiff five per cent thereof to compensate plaintiff for having contacted and interested the party with whom defendant made the deal that resulted in such "successful operation."

"Plaintiff may, if he chooses, set out the contract in suit ██ in haec verba, but this is not necessary, for it is sufficient to plead a contract according to its legal effect. Indeed, a complaint is not defective for the reason that the written contract is set out therein and its legal effect is also pleaded, although the statement of legal effect is superfluous.

"On the other hand, to state a cause of action for breach of contract it is necessary either to set out the contract literally or to state its legal effect. * * * Where a written agreement is pleaded in haec verba, its terms, rather than allegations pertaining thereto, control in determining the construction of the contract and the sufficiency of the pleading as against a demurrer. In such case an allegation inconsistent with the legal effect of the writing or putting a false construction thereon may be struck out as surplusage but is not ground for demurrer." 17 C. J. S., Contracts, sec. 535, pp. 1161, 1162.

The contract pleaded is alleged to be the handiwork of ██ defendant hence, if it be indefinite or uncertain in any particular, the responsibility therefor is that of the defendant who wrote it. Where, as here, the plaintiff further pleads that he accepted defendant's offer and that thereafter the owner of the property and the operator thereof were brought together through plaintiff's efforts resulting in a deal and "successful operation" from which defendant received and will continue to receive royalty payments on which it refuses to pay plaintiff the agreed commission, a cause of action is

402

stated. The well-pleaded allegations of the complaint are admitted by the demurrer and the complaint must be held sufficient as against a general demurrer if, on any theory, its allegations entitle plaintiff to any relief whatever. It was error to sustain the demurrer and render the judgment of dismissal herein.

Judgment is reversed and cause remanded with directions to overrule the demurrer to the complaint.

Mr. Chief Justice Johnson, and Associate Justices Morris, Cheadle, and Angstman, concur.